## UNITED STATES DISTRICT COURT

## WESTERN DISTRICT OF LOUISIANA

## MONROE DIVISION

| | |
|---|---|
| **UNITED STATES OF AMERICA,**<br>    **Plaintiff,** | **CIVIL ACTION NO.  66-12169** |
| **VERSUS** | |
| **RICHLAND PARISH SCHOOL BOARD**<br>    **Defendant,** | **JUDGE ROBERT G. JAMES** |
| **and** | |
| **DELHI CHARTER SCHOOL,**<br>    **Defendant-Intervenor** | **MAG. JUDGE KAREN L. HAYES** |

### <u>CONSENT ORDER</u>

Plaintiff United States of America ("United States"), Defendant Richland Parish School Board (the "District"), and Defendant-Intervenor Delhi Charter School ("DCS") having engaged in good-faith negotiations, do voluntarily agree to the entry of this Consent Order by the Court. After reviewing the terms of this Consent Order, the Court concludes that the entry of this Consent Order comports with the objectives of the Fourteenth Amendment to the Constitution of the United States of America and applicable federal law, and will further the orderly desegregation of the Richland Parish School District.   The parties agree to comply with the terms of this Consent Order.

## I.    PROCEDURAL HISTORY

This action began on July 21, 1966 when the United States filed a complaint seeking the desegregation of the Richland Parish School District. This Court entered several desegregation orders that still govern the District today.  *See* Order of May 12, 1970; Order of Aug. 14, 2008.

1

In 2013, the Court declared the District unitary in the areas of facilities, transportation, and extracurricular activities.  The District remains under Court order for student, faculty, and staff assignment.

Since 2010, the United States has undertaken a comprehensive review of the District and DCS.  To address the concerns of the United States following its review, the parties now approach the Court and request approval of this Consent Order.

## II.    LEGAL STANDARDS

"The duty and responsibility of a school district once segregated by law is to take all steps necessary to eliminate the vestiges of the unconstitutional *de jure* system."  *Freeman v. Pitts*, 503 U.S. 467, 485 (1992).  A school district under a desegregation order is obligated to (1) fully and satisfactorily comply with the court's desegregation Orders for a reasonable period of time; (2) eliminate the vestiges of the prior *de jure* segregation to the extent practicable; and (3) demonstrate a good-faith commitment to the whole of the court's Orders and to the applicable provisions of the law and the Constitution.  *See id.* at 491-92; *Bd. of Educ. of Oklahoma City Pub. Sch., Indep Sch. Dist. No. 89 v. Dowell*, 498 U.S. 237, 248-50 (1991); *N.A.A.C.P., Jacksonville Branch v. Duval County Sch.*, 273 F.3d 960, 966 (11th Cir. 2001); *Lockett v. Bd. of Educ. of Muscogee Cnty. Sch. Dist.*, 111 F.3d 839, 842 (11th Cir. 1997).  The affirmative duty to desegregate is a continuing responsibility, and "[p]art of the affirmative duty . . . is the obligation not to take any action that would impede the process of disestablishing the dual system and its effects."  *Dayton Bd. of Educ. v. Brinkman*, 443 U.S. 526, 537-38 (1979).  "Each instance of a failure or refusal to fulfill this affirmative duty continues the violation of the Fourteenth Amendment."  *Columbus Bd. of Educ. v. Penick*, 443 U.S. 449, 458-59 (1979).

The proper measure of a district's progress toward unitary status "is the effectiveness, not the purpose," of its actions. *Brinkman*, 443 U.S. at 537-38; *see also Swann v. Charlotte-Mecklenburg Bd. of Educ.*, 402 U.S. 1, 25 (1971). A district must show both past compliance with its desegregation obligations and a commitment to the future operation of the school system in a non-discriminatory manner. *See Dowell*, 498 U.S. at 247. To that end, a district must demonstrate its "affirmative commitment to comply in good faith with the entirety of a desegregation plan," not simply that it "had [not] acted in bad faith or engaged in further acts of discrimination since the desegregation plan went into effect." *Freeman*, 503 U.S. at 499.

The Supreme Court has identified six areas, commonly referred to as the "*Green* factors," to be addressed in the determination of whether a school district has fulfilled its duties and eliminated vestiges of the prior dual school system to the extent practicable. These are: (1) student assignment; (2) faculty; (3) staff; (4) transportation; (5) extracurricular activities; and (6) facilities. *Green v. Cnty. School Bd. of New Kent Cnty.*, 391 U.S. 430, 435-42 (1968); *Jenkins,* 515 U.S. at 88. The *Green* factors are not intended to be a "rigid framework," as the Supreme Court has approved consideration of other indicia, such as "quality of education," in determining whether a district has fulfilled its desegregation obligations. *See Freeman*, 503 U.S. at 492-93.

With respect to faculty and staff assignment, the seminal Fifth Circuit case, *Singleton v. Jackson Municipal Separate School District* held that "the principals, teachers, teacher-aides and other staff who work directly with children at a school shall be so assigned that in no case will the racial composition of a staff indicate that a school is intended for Negro students or white students." 419 F.2d 1211, 1217-18 (5th Cir. 1969) (en banc), *rev'd in part on other grounds sub nom. Carter v. West Feliciana Parish Sch. Bd.*, 396 U.S. 290 (1970). Once the faculty racial composition at the schools is substantially similar to the district-wide faculty average, "[s]taff

3

members who work directly with children, and professional staff who work on the administrative level will be hired, assigned, promoted, paid, demoted, dismissed, and otherwise treated without regard to race, color, or national origin." *Id.*

Subsequently, in *Fort Bend Independent School District v. City of Stafford*, the Fifth Circuit stated that:

> The proper inquiry to be undertaken in an effort to determine whether the [school district] is now unitary is two-fold: first, the district's current employment practices must be non-discriminatory and in compliance with constitutional standards; second, the adverse effects of any earlier, unlawful employment practices must have been adequately remedied.

651 F.2d 1133, 1140 (5th Cir. 1981). To this end, one factor to be examined is whether the school district has made a "sustained good faith effort to recruit minority faculty members so as to remedy the effects of any past discriminatory practices." *Id.* (citing *United States v. Tex. Educ. Agency*, 467 F.2d 848 (5th Cir. 1972)); *see also N.A.A.C.P., Jacksonville Branch*, 273 F.3d at 967 (finding a school board unitary in faculty and staff assignment because the Board, *inter alia*, "aggressively recruited black faculty and staff").

This Court has determined that this Consent Order is fair, just, reasonable, and consistent with the objectives and requirements of the Fourteenth Amendment to the Constitution of the United States of America, and the extant orders in this case. The parties further agree that entry of this Consent Order, without further litigation, is in the public interest.

Thus, **IT IS ORDERED** that the Joint Motion for Approval of Proposed Consent Order [Doc. No. 128] is **GRANTED**, and the Court **further ORDERS, ADJUDGES, and DECREES** the following:

### III.    REMEDIAL MEASURES

#### A.    Student Assignment

Under the 1969 Decree, the District was "permanently enjoined from discriminating on the basis of race or color in the operation of their parish school system" and was ordered to "take affirmative action to disestablish all school segregation and to eliminate the effects of the dual school system."  The District and DCS shall comply with the instant order and, in addition, shall take the following specific actions set forth herein to eliminate vestiges of the prior dual school system.

#### 1.    Richland Parish School District Student Assignment

The District operates eleven schools.  Overall, the District enrolls 3,099 students, 54% of whom are black, 44% are white and 2% are other races.[1]  Exhibit A, attached hereto, sets forth the current individual school enrollments by race and grade level.  DCS operates one school that serves grades K-12.  In 2015-2016, DCS enrolled 850 students, 65% white, 30% black and 5% other.  In 2015-2016, 443 of DCS's enrolled students reside in Richland Parish, 62% are white, 31% are black, and 7% are other.

Ten of the District's eleven schools have student enrollments that are more than 20% different from the Districtwide average.  DCS's student enrollment is majority white, while it is located in the Delhi attendance zone, which has a majority black population.

As a result, the parties have agreed to modify the Richland Parish School System's student attendance zones and DCS admissions and transfer criteria in a manner designed to eliminate vestiges of the prior dual school system.  For the 2016-2017 school year and beyond, the District shall modify its attendance zones and grade structures as set forth in Exhibit A.

---

[1]       The term "Other," in the context of race, refers to individuals of any race other than white or black, including multi-racial individuals.

Exhibit A contains maps depicting the current and new attendance zones as well as estimated enrollments of each school, by race, following the changes.  The student assignment changes are designed to convert the enrollments of more than half of the District's schools to enrollments within 20% of districtwide averages.[2]  Any student who is in 11th grade (juniors) in 2015-2016 in Richland Parish who is rezoned to a different high school pursuant to the terms of Exhibit A will have the option to remain in his or her current high school for 12th grade in 2016-2017.

2. <u>DCS and Delhi Elementary Kindergarten Admission Policy</u>

The parties agree to the following kindergarten admissions policies: For all incoming kindergarten students who reside in the Delhi zone (as revised per Section 1 above), there shall be a single application for DCS and DES kindergarten, in which families will specify the race of the student and may state a preference for DCS or DES.  DCS and DES shall hold a joint kindergarten open house for families.  Families may submit kindergarten applications at the open house.  Families may also submit kindergarten applications to the District's central office or to DCS; the Defendants will share copies of these applications with each other.  The parties will then implement a lottery system to assign kindergarten students to DCS and DES so that each school has the same ratio of black to white kindergarten students, taking into account families' preferences consistent with the goals of this Consent Order.  Twins or other multiple birth siblings (i.e., triplets), shall be in the lottery as one entry and permitted to attend the same school.  If DCS has additional openings in its kindergarten class after the lottery, it will enroll additional kindergarten students living outside the Delhi zone (including students who live outside Richland Parish) in the following order: (1) black students; (2) siblings of current students; (3) white and other race students.

---

[2]     The parties determined that it was not practicable to rezone the three Mangham schools due to geographic isolation of the schools and residential patterns in the parish.

If, after good faith negotiation, the District and DCS are unable to agree on an issue related to kindergarten registration, enrollment, assignment, or implementation of this Consent Order, either party may seek the assistance of this Court.

      3.    <u>Student Transfers</u>

      *a.    DCS Student Transfer Policy*

DCS shall accept no transfer students who reside in Richland Parish who have ever enrolled in the Richland Parish school system, (except for newly enrolling kindergarten students, per the requirements above) unless such student's transfer request qualifies as a transfer to DCS from his/her school of residence as a majority-to-minority ("M-to-M") transfer as if DCS were part of the Richland Parish school system.  Therefore, a student attending (or who has ever attended) a school in Richland Parish in which his race is in the majority may transfer to DCS if his race is in the minority at DCS.  This provision includes transfers applying mid-year or in the beginning of the school year.  DCS may permit its employees to enroll their children in DCS at any time, regardless of race, residence, or grade level.  Richland Parish shall not be responsible for transporting any student to DCS.

      *b.    Richland Parish Majority-to-Minority Intradistrict Transfers*

Pursuant to the 1969 Decree, the District shall continue to permit a student attending a school in which his race is in the majority to choose to attend another school where his race is in the minority. *Id*. at 3.  By April 1 of each year, the District will communicate information about the M-to-M program and application process directly to parents who have children eligible to participate in the M-to-M program through at least two media (e.g., hard copy letters by mail, robocalls, or electronic announcements, such as announcements made on student laptops).  In

communicating with families, the District will include efforts designed to reach families who face barriers to receiving information, including lack of digital access.

The District will provide information about the M-to-M program on its website, on the individual website of each school in the Parish, and will provide communications to community groups, such as the parent-teacher association and local community centers, and will distribute communications through local media, such as television, radio, and newspapers.

The District will hold at least five family information sessions, which will take place at a Parish school located in Start, Holly Ridge, Mangham, Delhi, and Rayville, in the evenings or on weekends prior to the deadline for M-to-M applications.  The District may combine M-to-M program information sessions with other information sessions, such as those regarding magnet programs and career courses.

All M-to-M communications shall include the following:

       i.    A statement that pursuant to the Court's Order the District encourages M-to-M transfers, which allows any student attending a school at which his or her race is the majority to transfer to another school where the student's race is in the minority;

       ii.    Notification that the District provides free transportation to any student who is granted an M-to-M transfer; and

       iii.    Information on the process to be used to apply for an M-to-M transfer, including the deadline for doing so.

    4.    <u>Attracting Students to the Majority-to-Minority Intradistrict Transfer Program</u>

In part to encourage families to request M-to-M transfers to attend Parish schools that remain more than twenty percent (20%) different from District-wide percentages of white and

black students, in the 2016-17 school year, the District will expand its academic enrichment after-school and summer program, funded by the 21st Century Community Learning Centers ("21st CCLC program"), to Rayville Elementary School, Rayville Middle School, Delhi Elementary School, and Delhi Middle School.  The District will advertise the 21st CCLC program in all communications and notices related to its M-to-M program (*see supra* at Section 3.b.), and shall also develop a plan to reach out to families about the 21st CCLC program in an effort to attract additional M-to-M applicants.  At a minimum, the plan must contain: (1) efforts to reach out to families who have students entering kindergarten, and (2) details on the content of the advertisements, including substantive information about the instruction available in the program, the fact that it is free to families, and that transportation is provided.  The District shall submit this plan to the United States by March 1, 2016, and the United States shall have 45 days to comment on or object to the plan.  The parties will work together in good faith to resolve all disagreements.  If the District and the United States are unable to resolve any disagreements in a reasonable period of time, either party may seek the assistance of the Court to resolve the disagreement.

5.      Classroom Assignment

The District and DCS agree to assign students to classrooms in ways that do not segregate or otherwise discriminate against students on the basis of race, color, or national origin.

6.      Miscellaneous

DCS will continue to make reasonable and good faith efforts to recruit and include black individuals on its board of directors and advisory committees, and shall make an increased effort to include black persons residing in the Delhi attendance zone.  DCS will continue to conduct

outreach to the black community and clarify any misperceptions about the admissions policies and standards of the school.

The District will continue to explore opportunities to establish a magnet school program at Delhi Elementary School.

### B.    Faculty and Staff Assignment

#### 1.    Richland Parish

Following final calculations of student enrollments in the rezoned schools, the District will evaluate the faculty and staffing needs in each school building and develop a plan to assign its faculty and staff, consistent with *Singleton*, 419 F.2d 1211, in ways that do not reflect the racial identity of the student enrollment of the schools.  The District shall submit this plan to the United States by May 1, 2016, and the United States shall have 45 days to comment on or object to the plan.  The parties will work together in good faith to resolve all disagreements.  If the District and the United States are unable to resolve any disagreements in a reasonable period of time, either party may seek the assistance of the Court to resolve the disagreement.

#### 2.    Delhi Charter School

DCS will develop a plan to recruit and hire black faculty and staff, and provide professional development and training for faculty and staff on enhancing the environment at DCS to ensure it is inclusive and welcoming of all students.  DCS shall submit this plan to the United States by May 1, 2016, and the United States shall have 45 days to comment on or object to the plan.  The parties will work together in good faith to resolve all disagreements.  If DCS and the United States are unable to resolve any disagreements in a reasonable period of time, either party may seek the assistance of the Court to resolve the disagreement.

## IV.     MONITORING, REPORTING, AND MODIFICATIONS

On or before October 15 of each year during the term of this Consent Order, the

Defendants shall each file with the Court and serve to the United States a report, as detailed

below.

### A.     Richland Parish School Board

The District's annual report shall include:

1.     The total number and percentage of students, by race and grade level,

enrolled in each school facility operated by the District, including

alternative schools.

2.     A list, by school, grade level, and race, of the students who were

suspended (in-school or out-of-school) for one or more days , transferred

to an alternative school for disciplinary reasons, or expelled, indicating the

infraction(s) for which the penalty was imposed.

3.     The total number of students retained in grade since the last report, by

race, grade, and school.

4.     The total number and percentage of teachers, administrators, and staff, by

race and position, grade or subject(s) employed, in each school facility.


5.     Copies of all newspaper and website notice(s) regarding the District's M-

to-M program.

6.     The number of students attending each school pursuant to an M-to-M

transfer by race and zoned school.

7.      The number of applicants to the M-to-M transfer program, by race and

zoned school, and the reason for denial of any applicant.

8.      The number of students, by race, grade level, and school, transferring

from DCS to any Richland Parish school in the preceding year.

9.      A description of all efforts made in conjunction with the faculty and staff

assignment plan referenced in B.1. above.

**B.      Delhi Charter School**

DCS's annual report shall include:

1.      The total number of students enrolled by race, grade, and resident school

district;

2.      For DCS students residing within Richland Parish School District, the

number of students, by race and grade, in each Richland Parish school

attendance zone

3.      The number of new students, by grade, race, and parish of residence (and,

for Richland Parish only, school attendance zone) accepted to DCS since

the time of the last report to the Court.

4.      A list, by grade level and race, of the students who were suspended (in-

school or out-of-school) for one or more days, transferred to an alternative

school or homebound schooling for disciplinary reasons, or expelled,

indicating the infraction(s) for which the penalty was imposed.

5.      The total number of students retained in grade since the last report, by

race, grade, and school.

6.     The total number and percentage of teachers, administrators, and staff, by race and position, grade or subject(s) taught.

7.     A description of all efforts made in conjunction with the faculty and staff recruitment, hiring, and training plan referenced in B.2. above.

8.     For each position open since the last report to the Court, a summary of recruiting efforts, the number of applicants to each position, by race, and the race of the person hired DCS may note in its submission how many applicants were not qualified for the position for which they applied, and the reason(s) why each individual was not qualified.

9.     Name, race, and parish residence of each member of the DCS Board of Directors and DCS Advisory Board.

10.    A description of all efforts made to include black individuals on the DCS Board of Directors and DCS Advisory Board.

11.    A description of all outreach conducted to the black community, including but not limited to any outreach made to clarify any misperceptions about the admissions policies and standards of the school.

**C.     Modifications**

Defendants must seek the United States' consent and obtain approval of the Court through an appropriate motion, which may be filed with or without consent, for all modifications of any term of this Consent Order, including all zoning changes, opening/closure of school facilities, or expansion of current facilities.

## V.      MISCELLANEOUS

Unless otherwise specified, all requirements herein shall be effective on the date the Court issues this order.

## VI.     FINAL TERMINATION

The District retains the burden of eliminating the vestiges of *de jure* segregation in the areas still under this Court's supervision.  The parties have agreed and the Court finds that the Defendants will meet their desegregation obligations if they fully and appropriately implement the requirements set forth in this Consent Order.  The District may move for a declaration of unitary status no sooner than sixty (60) days after the submission of its October 15, 2017 court report.  The applicable provisions of the Federal Rules of Civil Procedure and the local rules of this Court will apply to any such motion.

**SO ORDERED, ADJUDGED AND DECREED**, this 1st day of February, 2016.


_____

**ROBERT G. JAMES**
**UNITED STATES DISTRICT JUDGE**

14